Case 104.—ACTION BY MAUDE H. McDOWELL AND OTHERS AGAINST H. S. McCORMICK FOR FORCIBLE ENTRY— January 31.

## McCormick v. McDowell, &c.

Appeal from Ballard Circuit Court.

R. J. Bugg Circuit Judge.

Judgment for plaintiffs. Defendant appeals. affirmed.

Forcible Entry—Temporary Absence of Owner—Breaking Door of Cabin—Peremptory Instruction—In a forcible entry proceeding where the evidence shows that the plaintiff had been in the continuous possession of the premises, which was an island, for more than two years, occupying a cabin thereon by himself and tenants, and nailing it up when temporarily absent a few days, the fact that the defendant broke open the cabin and took forcible possession thereof on finding the owner absent, constituted a forcible entry in the meaning of the law, and was sufficient to authorize a peremptory instruction by the court to find the defendant guilty of the forcible entry complained of.

J. M. NICHOLS & SON for appellant.

J. B. WICKLIFFE for appellees.

Opinion of the court by Judge Settle—Affirming.

This is a proceeding of forcible entry and detainer. The land in controversy, known as "Tow Head Island," is situated in the Ohio river, fronting Mound City, Ill., but is embraced within the territorial boundary of Ballard county, Ky. At the inquest before the magistrate the jury found the appellant guilty of the forcible entry and detainer charged in the warrant. She thereupon traversed to the circuit court, and, the trial in that court having resulted as did the first, judgment of restitution was rendered in appellees' favor. Of that judgment, and the refusal of the lower court to grant her a new trial, appellant complains. At the conclusion of all the evidence in the circuit court each party asked for a peremptory instruction. Appellant's motion was overruled, but appellees' was sustained, and the jury instructed according to their request. This ruling of the court furnishes the sole ground relied on by appellant's counsel for a reversal of the judgment appealed from. So we must look to the evidence for the solution of the question presented for our decision.

Appellees, Maude H. McDowell, Ida M. Dyer and Frank R. Casey—the first two being residents of St. Louis, Mo., and the last of Illinois—claim to be joint owners of the island. Appellant, who is a resident of Fresno, Cal., also claims to own it; but as neither party exhibited, or could have relied upon, title, the question of ownership does not concern us. It appears from the evidence that the island is separated from the Illinois shore by only 150 yards of water, which, in the late summer and early fall, can be readily forded upon horses or in vehicles. The island contains a cabin and twelve or fifteen acres of cleared

land. No part of it is fenced, or in need of fencing, as the Kentucky shore is too distant and the water in that direction too deep to permit the crossing of stock from that quarter. Upon the other side there is no trespassing of stock from Illinois because of a statute in force in that State which requires the owners of stock to prevent them from running at large. It does not appear how long appellees' possession of the island has continued; but the testimony shows that, more than two years before the issual of the writ of forcible entry and detainer against appellant, they caused to be issued a writ of forcible detainer against one Lum Meacham, their tenant, who wrongfully refused to restore to them possession of the island at the expiration of a lease he had received from them. The inquest under that writ resulted in a verdict and judgment of restitution in favor of appellees; and they then appointed R. B. Cotter, of Mound City, their agent to take control of the island, and immediately placed him in possession thereof. According to the testimony of Cotter and several other witnesses, he has controlled the island ever since his appointment as such agent, and had it cultivated by tenants who occupied the cabin upon it nearly all the time. It is true, there were short intervals of a few weeks at a time, during a two years' control of the island by Cotter, when it was without a tenant, and at least two of the tenants were driven from it by high water, which, at times, covers it; but in each instance the tenant leaving was soon replaced by another of Cotter's choosing. The testimony also shows that a tenant of appellees vacated the island only ten or fifteen days before appellant's forcible entry thereon, and that before or about the time he left, Cotter had secured another to take his place, who

McCormick v. McDowell, &c.

was making preparations to move his effects to the island and occupy the cabin at the time appellant took possession of it. In addition to his control of the island as above indicated, Cotter, as the proof further shows, had, during the entire term of his agency, and at the time of the forcible entry complained of, that part of the island on the Illinois side in constant use for storing and tying up logs, he being a dealer in logs and lumber, and that he also rented to other persons in the same business the privilege of using the island for a like purpose.

The testimony fails to show that appellant ever had possession of the island. She formerly lived at Mound City, and claimed to have seen and been upon the island when a girl, but had for twenty years been a resident of California, from which State she returned to Mound City but a few weeks before her attempt to become possessed of Tow Head Island. Before going upon the island she called to see appellees' agent, Cotter, at his place of business, which is in Illinois, and 150 yards from the island. At that interview she informed him of her claim to Tow Head Island, and, as he testified, was in turn advised by him of appellees' claim thereto, and of their possession of the island by him as agent. Notwithstanding the information thus received of appellees' claim of title and possession, appellant purchased a lot of clapboards for use on the cabin, and had them carried to the island by boat in charge of a carpenter whom she employed to repair the building. Appellees' agent, Cotter, upon learning these facts, went to the cabin on the island, and, finding the carpenter engaged in repairing the cabin, ordered him to quit work and remove the boards and other material purchased by appellant. The carpenter promptly

obeyed Cotter's order, and left the island, taking the
boards and other material with him. Cotter then
nailed up the door of the cabin, and, leaving the
cabin and island in charge of two of his employes,
returned to his place of business. After his depart-
ure appellant and a female friend from Mound City
arrived at the cabin in a vehicle, which contained a
few articles of furniture. Finding the cabin door
nailed up, she broke it open with an axe which she
had with her, and had her furniture removed from
the vehicle into the cabin. She then seated herself
in the cabin door, where she remained until Cotter,
who had in the meantime learned of her conduct, re-
turned to the island. He at once demanded that she
leave the island, and, upon her refusing to do so,
procured the issual of the writ of forcible entry and
detainer.

The only legitimate inquiry on the trial of a writ
for forcible entry and detainer is whether the de-
fendant entered upon land which, at the time of the
entry, was in the actual possession of the plaintiff.
The defendant can not justify an entry in such case
by showing title or right of entry. (Civ. Code Prac.,
sec. 452; Robinson v. Marshall, 78 S. W., 904, 25 Ky.
Law Rep., 1785; Hunt v. Wilson, 53 Ky., 44, and
Dils v. Justice, 9 S. W., 290, 10 Ky. Law Rep., 547.)
The primary question to be determined in the case at
bar is, were appellees in actual possession of the
island in controversy when appellant entered
thereon? Obviously the possession of appellees was
sufficient to maintain the proceeding of forcible en-
try and detainer, if that of their agent, Cotter, was
actual. In Brumfield v. Reynolds, 4 Bibb, 388, which
was a case of forcible entry, Reynolds leased Brum-
field a tract of land for a term and put him in posses-

sion of it, but before the expiration of the latter's term Reynolds purchased of him the residue of the term. After the removal of the tenant from the premises, Reynolds "permitted the house to remain unoccupied; and in that situation, when no crop was growing in the field, Brumfield (the former tenant), without any actual force and while part of the fence was down, but without the assent of Reynolds, entered upon and took possession of the house" under a claim of title. After the evidence was introduced Brumfield moved the court to instruct the jury that if the house was vacant and open, and the fence was down, and no crop growing when he entered, and that he entered without force or violence and took possession according to his title, they should find for him. The court refused to give the instruction, but told the jury that if they found from the evidence that Reynolds was in fact possessed of the premises at the time Brumfield entered, and that the entry was made against the will and without the assent of Reynolds, they ought to find Brumfield guilty of the forcible entry. In approving the last instruction, this court, by Judge Owsley, said: "The motion of Brumfield for instructions must have been predicated upon the hypothesis that Reynolds could not be actually possessed of the premises without a crop growing upon the land, unless some person resided in the house or the field was inclosed by a fence. * * * That Reynolds might be possessed by other means we apprehend there can be no doubt; for if, after his tenant left the house, he continued to exercise an ownership over the premises by such acts as indicated an intention not to abandon, but to hold the exclusive possession to himself, he can not be supposed to have been divested of the possession; and, as the

evidence in the cause is of that character from which
the jury might reasonably have inferred the continu-
ance of such a possession, the decisions of the court
both in overruling the motion of Brumfield and giv-
ing the instructions asked by Reynolds were correct.
With respect to the title of Brumfield, it need only
be remarked that, if we are correct in supposing the
evidence conduced to prove a possession in Reynolds,
the bare entry upon that possession, whether with or
without title, if without the assent of Reynolds is in
contemplation of law a forcible entry, and for which
Reynolds is entitled to restitution."

The law as announced in the case supra we find to
be in harmony with the later decisions of this court
on the question under consideration, and it is pecu-
liarly applicable to the case at bar; for the evidence,
as already indicated, conduced to prove that appel-
lees, through their agent and tenants, had actual pos-
session of the land in controversy (leaving out of con-
sideration its use in maintaining log yards upon and
along its banks) by cultivation of crops, and by al-
most constant occupancy of the cabin, and, though
the cabin was unoccupied when appellant entered the
premises, it was only temporarily vacant. The last
tenant had left it only a few days before, and the new
one was daily expected. In view of the facts, there
can be no doubt that it was appellees' intention to
continue to hold the exclusive possession of the island
to themselves, and that such possession was in fact
and in law actual. There was no evidence to support
appellant's claim of possession, and, that of appel-
lees being sufficient to show actual possession, the
peremptory instruction directing the verdict in their
favor was proper. The case of Dils v. Justice, 9 S.
W., 290, 10 Ky. Law Rep., 547, relied on by counsel

for appellant, is not in conflict with the views herein expressed.

Judgment affirmed.

Petition for rehearing by appellant overruled.