## Holman, et al. v. Parsons.

(Decided February 2, 1915.)

## Appeal from Mercer Circuit Court.

1. Forcible Entry and Detainer—Possession—Title.—A proceeding of forcible entry involves only the possession of land; the title thereto is not involved in any way.

2. Forcible Entry and Detainer.—One who enters upon land in the actual possession of another, without his consent, may be removed by a writ of forcible entry and detainer though the right of entry was in him, and an action instituted by him involving the title and right of possession was pending.

3. Forcible Entry and Detainer—Evidence—Possession.—In a forcible entry proceeding the plaintiff having the paper title may put his deed in evidence to show the extent of his possession.

E. H. GAITHER for appellants.

C. E. RANKIN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Affirming.

This is a proceeding of forcible entry begun by appellee, Sarah J. Parsons, against Joe Holman and the other appellants, in the Mercer County Court, and finally tried in the Mercer Circuit Court. The judgment in each court was favorable to the appellee. The defendants appealed.

Appellant, Joe Holman, is the only child of Lettie Owens, now deceased; the other appellants are the sons of Joe Holman.

Mrs. Owens owned a house and lot in McAfee, Mercer county. She lived in part of the house and rented the other portion of it to a family named Smith. That portion occupied by Mrs. Owens was furnished and consisted of two bed rooms, a dining room and a kitchen. The upper part of the house was furnished by her tenants, with the exception of one room that Mrs. Owens reserved as a storeroom.

About the last of December, 1913, leaving her tenants in possession of the house and lot in McAfee, Mrs. Owens was taken by her grandchildren to Oregon, a village seven miles distant, for a visit. She was very old and quite feeble; and, in addition to these infirmities, she was suffering from an injury to her hand that was

developing blood poisoning, and ultimately caused her death.

After Mrs. Owens had remained in Oregon about a week, she became restless and requested her granddaughters to take her back to McAfee, which they did, one driving her grandmother in her own buggy, and the other granddaughter following in another buggy to take her sister back home. The girls were mere children.

Before leaving Oregon, it was understood by Mrs. Owens and her son, Joe Holman, that as soon as one of his boys returned from taking a load of tobacco to Lexington he would go to his grandmother's house, in McAfee, and live with her as he had theretofore done, and take care of her stock, which consisted of a cow and a horse. When Mrs. Owens reached home it was discovered that her tenants had deserted the premises; and, as the children who had accompanied her were not prepared to remain, one of them procured the services of the appellee, Sarah Jane Parsons, to take care of Mrs. Owens until her son Joe could be notified of the situation. This occurred on a Saturday. On the next day Joe Holman arrived at his mother's house in McAfee and found her quite ill, and attended by Mrs. Parsons, who continued in attendance at the suggestion of Holman. Mrs. Parsons took charge of the premises, keeping house for herself and Mrs. Owens.

On Monday Holman was called by a business engagement to a different part of the county and did not return until Thursday. On the same day two of the Holman boys came to their grandmother's house, at McAfee, to live with their grandmother, in accordance with the arrangement above referred to. Holman and his children occupied a part of the house; and, after taking one meal with Mrs. Parsons, they commenced housekeeping. The next day the boys' sister arrived and took charge of their part of the house.

On Saturday, January 5, 1914, Mrs. Owens died. She was buried on Sunday; and on Monday Mrs. Parsons produced a deed which had been signed by Mrs. Owens on the previous Monday, conveying to her the house and lot in McAfee in which they were then living. The consideration recited in the deed was the undertaking of Mrs. Parsons to board and nurse Mrs. Owens for the rest of her life. Mrs. Parsons demanded possession of

that portion of the house occupied by the Holmans, and, upon the refusal of Holman and his boys to surrender, she ejected them by means of a forcible detainer, as above stated.

These facts having been shown, the court instructed the jury to find for the plaintiff, Mrs. Parsons, if they believed from the evidence that she was in the actual possession of the property in question at the time the defendants entered it; and that it was immaterial how she obtained that possession.

Appellants insist that the proof did not warrant this instruction, since it did not show that Mrs. Parsons ever had actual possession of the property.

The proceeding of forcible entry involved only the possession of the land; the title thereto was not involved in any way. It matters not how one gains possession of land; he is entitled to hold it until ousted by proper legal proceedings.

In Young v. Young, 109 Ky., 123, the court said:

"One who enters upon land in the actual possession of another, without his consent, may be removed by a writ of forcible entry and detainer, though the right of entry was in him, and an action instituted by him involving the title and right of possession pending."

Sub-section 1 of Section 452 of the Civil Code of Practice defines a forcible entry to be "an entry without the consent of the person having the actual possession."

There is, therefore, no question here except that of possession. And, although it may develop later, in some other proceeding, that the deed to appellee was without consideration, or a lack of mental capacity may be shown, that is an entirely different matter, and is not open for adjudication in this action. McCormick v. McDowell, 121 Ky., 832; Engle v. Tennis Coal Co., 125 Ky., 239.

Appellee offered her deed in evidence to show the extent of her possession, and it was properly admitted for that purpose. Willis v. Whayne, 142 Ky., 194.

But there was other evidence tending to show that Mrs. Parsons was in possession of the property as owner at the time the forcible entry was made. It is true this claim by Mrs. Parsons was controverted by the appellants, but it was for the jury to determine the issue between them.

As the instruction rested the case upon the actual possession of the property by Mrs. Parsons at the time

the appellants entered upon it, it properly gave the law of the case; and there being evidence to sustain the verdict, it will not be disturbed.

Judgment affirmed.