# New York-Kentucky Oil & Gas Company, et al. v. Miller, et al.

(Decided February 27, 1920.)

## Appeal from Estill Circuit Court.

1. Forcible Entry and Detainer—Actual Possession.—To sustain a charge of forcible entry plaintiffs must prove actual possession of land involved when the forcible entry is alleged to have been made. (Civil Code, Sec. 452.)

2. Forcible Entry and Detainer—Evidence—Possession.—A proceeding of forcible entry involves only the possession of land and the title thereto is not involved in any way, but title papers are competent evidence to show the extent of possession.

3. Forcible Entry and Detainer—Boundaries—Possession.—Where a claimant holds under a deed describing a boundary with sufficient accuracy that it can be run by a surveyor and the boundary lines have been marked, he is in actual possession to the full extent of the boundary described in his deed so long as he is in actual possession of any part thereof claiming the whole.

4. Forcible Entry and Detainer—Possession—Title.—The same kind of actual possession that will in time ripen into good title will maintain an action of forcible entry.

5. Forcible Entry and Detainer—Boundaries—Constructive and Actual Possession.—The term "constructive actual possession" applied to land within a claimed boundary but beyond the portions actually occupied and used by claimant, and which was always recognized as an actual possession, has been dropped by the court as being confusing, and a possession is either constructive or actual and cannot be both constructive and actual.

6. Landlord and Tenant—Repudiation of Lease.—A tenant who repudiates his lease and his landlord's title cannot rely upon the description in the lease to show the extent of an adverse holding he intends to assert against his landlord.

7. Forcible Entry and Detainer—Possession—Evidence.—Since evidence of adverse possession of defendants' vendor was very conflicting and the question of possession was submitted upon instructions of which there is no complaint, the verdict cannot be said to be flagrantly against the evidence.

8. Landlord and Tenant—Evidence.—Held not error to permit plaintiffs, who claim the land, to testify that there had been no time within thirty years that they had not had tenants thereon, since it is reasonable to presume that they knew and so stated as a fact and not as a mere conclusion or opinion.

9. Adverse Possession—Grazing Stock—Evidence.—Evidence that defendant had permitted certain persons to graze stock upon the

land was incompetent since occasional trespasses or acts of ownership are insufficient to sustain a claim of adverse possession.

WORTHINGTON & BROWNING and MARTIN T. KELLY for appellants.

E. C. O'REAR, HENRY R. PREWITT, CHARLES KIMBALL, BENTON & DAVIS and J. C. JONES for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This is an appeal by the defendants from the verdict and judgment of the circuit court, upon a traverse from the verdict of the quarterly court, convicting them of a forcible entry upon about fifteen acres of land, of which the plaintiffs, now appellees, had possession.

To sustain their charge it was necessary for plaintiffs to prove actual possession of the fifteen acres of land involved when defendants made the entry upon same without their consent. Civil Code, section 452. The defendants contend upon this appeal that the plaintiffs failed to prove that they had actual possession of the fifteen acres involved when defendants admittedly entered thereupon, and that the court therefore erred in not directing a verdict in their favor, and that the verdict is flagrantly against the evidence. They also complain that the court erred in the admission of incompetent evidence.

1. To sustain their claim of possession plaintiffs introduced several deeds under which they claim to have entered upon, and been in the actual possession of, a large boundary of land containing 6,918 acres, which is known in the record as the Townsend tract. The earliest of these deeds is dated October 13, 1871, in which the 6,918 acre tract is accurately described by metes and bounds and courses and distances, and there is proof that the boundary lines are plainly marked by a line of blazed trees which as early as 1899 appeared to be old marks and to have been there long enough for the places to heal and grow over on large trees. It is also in evidence for the plaintiffs that they and their predecessors in title have at all times since about the date of this deed and for forty years or more had agents and tenants living within the boundary. It is admitted that the land involved in this action lies within this large boundary of land. This deed was made by the master commissioner

pursuant to a judgment in an action by James Townsend's administrator against James Townsend's heirs, and purported to convey whatever title he had to plaintiffs' predecessors in title; they thereafter purchased and took deeds from five of the nine or ten heirs of James Townsend for their undivided interests in this same tract of land, and later also took a deed for the same tract from the Haggin heirs, but whether any or all of these deeds to plaintiffs and those under whom they claim conveyed a good title is immaterial upon this inquiry in which only their possession is involved. However, these title papers are competent evidence to show the extent of possession. Holman v. Parsons, 162 Ky. 454, 172 S. W. 920.

The fact that plaintiffs' evidence was sufficient to show some kind of possession of the entire 6,918 acre tract not adversely held against them at the time of the complained of entry of the defendants is not combatted, but it is insisted that such possession as they had of the land within the boundary not actually occupied and used by their agents or tenants was only a constructive possession and not the actual possession necessary to maintain an action of forcible entry.

The rule is thoroughly established in this state that where a claimant enters upon land under a deed describing a boundary with sufficient accuracy that it can be run by a surveyor, and the boundary lines have been located and plainly marked, he is in actual possession to the full extent of the boundary described in his deed so long as he is in the actual possession of any part thereof claiming the whole, except insofar as portions thereof are held adversely by actual occupancy and user. Burt & Brabb Lumber Co. v. Sackett, 147 Ky. 232; Sackett v. Burt & Brabb Lumber Co., 150 Ky. 748; Lipps v. Turner, 164 Ky. 629.

The actual possession that will support an action for forcible entry or detainer is the same kind of actual possession that will in time ripen into a good title, and is determined by the same rules as in any other action. Henderickson v. Linville, 31 R. 967, 104 S. W. 688; Henry v. Clark, 4 Bibb 426; Brumfield v. Reynolds, 4 Bibb 388; Howard v. Whitaker, 22 R. 1775, 61 S. W. 355; Wall v.

Nelson, 3 Litt. 395; Chiles v. Stephens, 1 A. K. Marsh 334; Richey v. Owsley, 137 Ky. 63.

The possession such as plaintiffs had within their claimed boundary but beyond the portions they were actually occupying and using by tenants and agents was at one time designated as a "constructive actual possession," but it was always recognized as an actual possession as distinguished from constructive possession which accompanies title in the absence of actual possession; and, its use having been found to be confusing rather than helpful in designating character of possession, the court has dropped the word "constructive" in connection with an actual possession, and but two characters of possession are recognized in the more recent opinions. A possession is either constructive or actual and cannot be both constructive and actual. As plaintiffs' proof showed that they had agents and tenants living upon and using parts of the Townsend tract claiming the whole continuously for about forty years and covering the time of defendants' entry upon the fifteen acres within that boundary, it is apparent the court did not err in overruling the defendants' motion for a directed verdict, unless, as contended by defendants, plaintiffs' proof established the further fact that defendants and those under whom they claim had been, for more than fifteen years before the suit was filed, in the actual adverse possession of a tract of 1,636 acres known as the Puckett tract within the larger Townsend tract and in which the fifteen acres involved is conceded to lie.

The proof which defendants claim established the fact that the Puckett tract, within the Townsend tract, had been held adversely to plaintiffs by the defendants and those under whom they claim for more than fifteen years before the institution of the suit, is in substance as follows:

The land which had been actually occupied and used by plaintiffs' agents and tenants, while within the Townsend boundary, was outside of the Puckett boundary. James Townsend, prior to his death, and in 1859, leased to his son-in-law, William Puckett, the Puckett tract and William Puckett lived on the Puckett tract until his death about 1886, leaving a widow, Minerva Puckett, who was a daughter of James Townsend, and two sons, William and Willis.

Prior to his death, however, William Puckett and his wife, Minerva, on July 24, 1875, conveyed to the plaintiffs their every interest in the entire Townsend tract of 6,918 acres, which included, of course, the Puckett tract, but William Puckett remained upon a very small portion of this land until his death, as did his wife, Minerva, until her death, under a deed for a life estate in this small tract; and after her death the two sons, William and Willis, remained for a time in the house which she occupied. Thereafter, on September 25, 1888, the Haggin heirs, claiming to own the whole Townsend tract, demanded possession of Willis Puckett, and shortly thereafter instituted suit against plaintiffs to recover the whole Townsend tract. Willis Puckett was not a party to this action, which was settled, and the Haggin heirs conveyed the entire tract to plaintiffs.

When the Haggin heirs demanded possession of Willis Puckett he surrendered same to them and they leased to him the Puckett tract of 1,636 acres for a term of five years, it being stated in the lease that at its expiration he was to have a deed for a hundred acres of the land, but while he was occupying the Puckett tract as a tenant of the Haggin heirs the latter conveyed the whole to the plaintiffs, which of course made Willis Puckett the tenant of plaintiffs for so much of the five year term as had not expired when his landlord conveyed to plaintiffs.

It is the contention of the defendants, who claim under Willis Puckett, that this lease to him by Haggin's heirs was repudiated by Puckett, and he so testifies, after its expiration and upon the failure to convey to him the 100 acres as stipulated in the lease, and that he has since been continuously living within the Puckett boundary claiming to the extent thereof, and that he has therefore been in the actual possession of the whole of the Puckett boundary upon the same principle and in the same way that plaintiffs have had possession of the Townsend tract beyond the portions actually used by their agents and tenants; that the Puckett tract had been separated from the Townsend tract by the lease which accurately described it, and by the fact that the deed from Haggin's heirs to plaintiffs, in addition to describing and conveying the entire Towsend tract, separately described and conveyed the Puckett tract.

This is to us a novel contention. Evidences of title such as deeds, &c., purporting to convey title, whether valid or not, under which an entry is made, constitute color of title and accompanied by actual possession evidence possession to the extent of the boundary described therein, but we have never heard of a lease, when repudiated by a tenant, being color of title against the landlord so as to give the tenant adverse possession not only of such portions of the land as he may occupy and use adversely, but to the full extent of the boundary described in the repudiated lease. We are cited to no authority whatever so holding and we are sure there is none, nor is there any analogy between the possession of a grantee under a deed which purports to convey the title and the possession of a tenant who holds over after the repudiation of a lease.

The tenant who repudiates his lease and his landlord's title certainly cannot insist that lease is yet effective and at his disposal to show the extent of an adverse holding he intends to assert against his landlord, and not under but against the lease. His position is more nearly an antithesis than an analogy to that of a grantee in possession under color of title. Except as to the 100 acres, at least, which by the terms of the lease were to be conveyed to Willis Puckett when the lease expired, he was a squatter without color of claim of title by which he might extend his possession beyond his actual occupancy and user. To the 100 acres he may have had color of title if he had remained on this portion of the land *under the lease* (1 R. C. L. 711, 2 C. J. 174), and the description was sufficiently accurate, but with this 100 acres we are not concerned, as the 15 acres involved in this action is not claimed to be within same, and we do not, of course, venture an opinion whether or not he had color of title thereto under a lease he says he repudiated. Hence we think it is clear the court did not err in overruling defendants' motion for a directed verdict on the evidence introduced by plaintiffs.

2. Neither were defendants entitled to such an instruction upon all of the evidence since the evidence of Puckett's possession, both as to its extent and character, was very conflicting. Plaintiffs proved their actual possession of the entire Townsend boundary except as to certain portions not involved here unless defendants proved Puckett's adverse possession of the Puckett tract

within same. To our minds it is extremely doubtful if defendants' evidence even tended to prove adverse possession in Puckett of this Puckett tract, upon which alone they must depend to defeat plaintiffs' possession of the tract involved. But they got the benefit of this doubt when the lower court submitted the question of possession to the jury upon instructions of which there is no complaint; and there is ample, and to us convincing, evidence to support the verdict.

3. Defendants also complain of the court's action in permitting counsel for plaintiffs to ask each of the several plaintiffs the following question: "Has there been any time within the last thirty years that there has not been tenants living within that boundary of land as the tenants of you and your co-plaintiffs?" and in permitting the witnesses to answer the question "No, sir."

It is insisted that the question called for and the witnesses gave only their conclusions or opinions rather than facts pertinent to the inquiry. This we do not think is true. The witnesses were the plaintiffs who claimed the land and placed tenants thereon, and it seems reasonable to presume that they knew and stated as a fact, not as a mere conclusion or opinion, whether there had been any time that they had not had tenants upon the land.

Complaint is also made that Jeff Bush, when asked if Willis Puckett, while living upon Puckett's creek, did not have deeds from plaintiffs for the particular parcel upon which he lived, was permitted to answer, "Well, yes, I suppose so."

If this evidence, because not the best evidence, which would have been the deeds themselves, was incompetent, the answer "Well, yes, I suppose so," is so lacking in probative value that its admission could hardly have influenced the jury upon the issue submitted to them and was surely not prejudicial.

Defendants also complain that the court would not permit them to prove by Willis Puckett that he had sometimes let people graze their stock upon the left-hand fork of Puckett's creek, upon which the 15 acres lies, and received pay therefor. This evidence was incompetent, not because the parties to whom he claimed to have rented it were dead, but because occasional trespasses

or acts of ownership are insufficient to sustain a claim of adverse possession.

Finding no error prejudicial to appellants' substantial rights, the judgment is affirmed.