## Brown v. Thomas.

February 3, 1948.

Rehearing denied March 16, 1948.

Chester D. Adams, Judge.

Paul L. Brown, in pro per., and Fowler & Fowler for appellant.
Andrew S. Moore for appellee.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

Paul L. Brown, appellant, instituted forcible detainer proceedings against Luther Thomas, appellee. After Brown had procured a favorable jury verdict in magistrate's court, Thomas took an appeal to circuit court. And there Thomas filed answer setting up defense and also filed motions to transfer the case to equity and to refer it to the master commissioner to hear evidence. Upon completion of evidence, the master commissioner made his report in favor of Thomas. The Chancellor confirmed the report and entered judgment in favor of Thomas, giving him title to the subject property and also its possession. Thereupon, Brown perfected this appeal.

Brown says that (1) title was not a proper legal

issue in his forcible detainer proceedings and that (2) Thomas' defense, as pled by his answer, was vitiated by provisions of Statute of Frauds law.

This record shows that the real estate in question was sold on October 22, 1938, in an equity action filed by City of Lexington in Fayette Circuit Court against Luther Thomas, the appellee, and others to satisfy city taxes; that the sale price was $156 after an official appraisal of its value at $150; that the purchaser was Paul L. Brown, the appellant, who elected to pay the sale price in cash but thereafter failed to satisfy it in any manner until January 27, 1945, when he paid an accrued total of $213.49 in principal, interest and costs and immediately thereupon received a master commissioner's deed for the property; that Brown thus held title to this property upon the date of the institution of these forcible detainer proceedings; that Thomas never relinquished actual possession of the property at any time after the sale of 1938; that in 1942 Brown and Thomas held a conference, wherein they orally agreed upon the future status of this property and upon their own mutual relationship pertaining thereto; that Brown says the oral agreement provided for Thomas to rent the property at $5 per month, while Thomas says the oral agreement provided for his purchase of the property from Brown for $20 down and for $10 per month thereafter until there should be a full reimbursement to Brown for the property's sale price, following which it would belong to Thomas; that Thomas paid Brown a total of $189, according to Brown's figures, or $179, according to Thomas' figures, mostly in monthly installments of $5 each over a period extending from June 22, 1942, until December 2, 1944, in pursuance of their oral agreement, which was either one of sale or one of rental contract; that after the cessation of payments by Thomas in December of 1944, Brown paid into court his obligation for the property, procured his deed, demanded possession from Thomas, then instituted these proceedings of forcible detainer upon Thomas' refusal to surrender possession.

1. Appellant says the question of title was not a proper subject of inquiry in this case. As a statement of broad principle, it is correct to say that title is not

on trial in a forcible detainer case. Holman v. Parsons, 162 Ky. 454, 172 S. W. 920; Lovely v. Stacey, 171 Ky. 338, 188 S. W. 389; Chapman v. Farris, 195 Ky. 362, 242 S. W. 359. However, it is equally correct to say that in forcible detainer cases there may frequently be a necessity of showing some vestiture of title as a preliminary step for establishing a right of possession. Right of possession, which is the very heart of forcible detainer, ordinarily travels along with right of ownership. And so it may become necessary in one of these cases to show right of ownership in order to show right of possession. See Richie v. Owsley, 137 Ky. 63, 121 S. W. 1015; Hall's Ex'rs. v. Robinson, 291 Ky. 631, 165 S. W. 2d 163.

When Thomas denied Brown's right of possession in this case, we know of no method by which that problem could have been solved except by the method of inquiring as to vestiture of title. Brown would have been in bad shape had not such inquiry been made, because Thomas stood holding actual possession while completely denying Brown's asserted rights relating to this property. The chancellor was entirely justified, we believe, in probing the title question to the extent indicated. But his conclusion as to the vestiture of this title in Thomas instead of Brown seems to be erroneous for the reason hereinafter explained in this opinion.

2. Appellant further contends that Thomas' defense, growing out of the oral agreement of 1942, is vitiated by provisions of KRS 371.010, known as our Statute of Frauds. Such defense was, in substance, that Thomas had bought this property from Brown on an installment basis by their 1942 agreement. Since our Statute of Frauds provides that no contract for sale of real estate may be enforced unless it is in writing, we believe appellant must be sustained in this contention.

Appellee counter argues that an agreement for a *redemption* of real estate is an exception to the Statute of Frauds rule. But even if we concede the existence of such an exception, still we would have to question appellee's privilege of coming within this exception when we consider the fact that there never was any legal right of redemption in this particular instance. A right of redemption does not exist where the property has

been sold for more than two-thirds of its appraised value. See KRS 426.530. This record shows that the subject property was sold for more than the full value of its appraisal. Therefore, no legal right of redemption ever existed.

But in addition to the previously mentioned inhibition of the Statute of Frauds, it has another one against contracts not to be performed within one year. According to appellee's own evidence, this contract was to be performed over a period of at least 13 months. In reality, its performance continued over a period of 30 months.

And so, it appears that appellee's oral contract of 1942 was antagonistic to provisions of the Statute of Frauds in two particulars, viz., because it was, if we accept his interpretation, one for purchase of real estate and because it was one not to be performed, as he himself testified, within one year.

While it is true that appellant's conduct in failing to satisfy his obligation for this property with due punctuality was rather reprehensible, yet it seems to have been condoned by the interested parties to the extent that no resale was ever ordered and to the extent that a deed was finally executed and delivered to him. We understand from this record that an official report of the 1938 sale was duly and properly made. And we also gather from the record that the report of sale was properly approved at or about the time it was filed in court. From the time of the sale in 1938, Brown acquired a vested equitable title to this property, which title was thereafter perfected upon confirmation of the sale. See Hughes v. Swope, 88 Ky. 254, 1 S. W. 394.

In re Rapier Sugar Feed Co., D. C., 13 F. Supp. 85, 89, we find this language:

"The final order of confirmation has the effect of a final, conclusive judgment. It cures all irregularities, misconduct, and unfairness in the making of the sale, and errors in the order itself and proceedings under it, if the court had jurisdiction to order the sale and the selling officer had authority to sell."

The conclusion is inevitable, we believe, that Brown had, in 1942 when he made the oral agreement with

Thomas, such a title as to enable him, regardless of his previous tardiness in satisfying his obligation with the court, to sell or to rent the controversial property. But since the oral contract to sell by installments extending beyond twelve months was one of antagonism to the Statute of Frauds, a contract to rent must become the necessary alternative under the facts of this case. Therefore, the oral agreement of 1942 must be construed as a rental contract for this property in which Brown had vestiture of title and for which he had a continuous right of possession from the date of confirmation of the master commissioner's sale. And since he had a right of possession, he had the sine qua non of forcible detainer and was accordingly entitled to judgment in his favor in these proceedings.

Wherefore, for the reason indicated, the judgment is reversed with directions for the entry of another one consistent with the views expressed herein.