**WHITE et al. v. HALL et al.**

Court of Appeals of Kentucky.
Dec. 6, 1951.

Rehearing Denied Feb. 22, 1952.

E. B. Rose, Beattyville, Kelly Kash, Irvine, and Buford A. Short, Beattyville, for appellants.

Clem F. Kelley, Lexington, for appellees.

STEWART, Justice.

This forcible entry proceeding was tried upon a traverse in the Powell Circuit Court. From a judgment entered upon the verdict of the jury finding defendants not guilty and dismissing the writ plaintiffs appeal.

Appellants, twenty-two in number, complain of errors of the trial court (1) in admitting evidence of appellees, five in number, concerning title to the land in controversy; (2) in permitting certain remarks of appellees' counsel before the jury with reference to the title; and (3) in failing to direct a verdict for them.

The record shows that the heirs-at-law of one J. B. White executed an oil and gas lease to Charles E. Ledford on February 9, 1948, for a ten-year period, covering a tract of 644 acres located in Powell and Wolfe counties. By mesne assignments the various appellants acquired interests in the Ledford lease contract. Under date of October 6, 1948, one E. H. Fuller leased to Sherman Hall, one of the appellees, all of the mineral rights in and to 300 acres of land situated in Powell county for a period of one year, with the privilege of renewing the same upon terms therein set forth. Hall thereafter transferred interests in his lease contract to the other four appellees.

This litigation developed out of the fact that the property leased to appellees lapped over onto and embraced 204 acres of the west portion of the land leased to appellants. Accordingly, we have the issue raised as to whether appellants or appellees are entitled to exercise possessory rights over the 204-acre strip. Both parties claim the mineral rights in and to the land in dispute and both gave sufficient notice to the other of such claim.

Appellants charge that the alleged forcible entry occurred in December of 1948 when appellee, Hall, who is an oil-well drilling contractor, moved his equipment onto the 204-acre strip. Prior to this event Hall had drilled an oil and gas well for appellants on the land under lease by them. At the time of Hall's employment by appellants the western boundary line of their leased premises was pointed out to him, which line appellants say was established by a federal survey and was plainly marked. Appellants testified they have sunk at least one producing oil-well on the 204-acre strip, although this act is denied by appellees. Appellants therefore maintain that appellees knew full well that the former were in possession of the entire 644-acre tract when the latter entered upon their leasehold. By reason of their possession of the 644-acre tract within well marked boundaries appellants argue that assertion of title and right of entry are not a defense to the forcible entry proceeding instituted by them against appellees.

Appellees admit they entered upon the 204-acre strip but they deny they went on any part of the 440 acres. Hall testified he drilled an oil and gas well as an employee of appellants, but he insists his work was all performed on the 440 acres. It seems to have been definitely established by the evidence introduced by appellees that the White heirs had title to only 440 acres, and, in this connection, two facts stand uncontroverted in the record. The first is that J. B. White originally acquired his land under a sheriff's deed which called for only 440 acres. The second is that the surface of the entire 644-acre tract was condemned in the United States District Court for the Eastern District of Kentucky in 1938 by the United States for forestry purposes, in which proceeding the White heirs filed their answer claiming ownership to, and receiving settlement for, 440 acres, and in which suit E. H. Fuller set up ownership to and was paid for 204 acres. Appellees not only rely upon the ownership of the controversial strip by their lessor, Fuller, but they strongly contend that appellants never established possessory rights over any part of the acreage.

■ ■ Both appellants and appellees introduced title papers by way of proof to determine the boundary line between the land of the White heirs and the land of E. H. Fuller in order to establish thereby

the ownership of the 204-acre strip. Appellants now attack the whole proceeding in the lower court as one to quiet title rather than one of inquiry into the sufficiency of possession to maintain the writ. Broadly speaking the title is not on trial in a forcible entry proceeding. Snyder v. Crutcher, 290 Ky. 71, 160 S.W.2d 156; Chapman v. Farris, 195 Ky. 362, 242 S.W. 359. But we said in Brown v. Thomas, 306 Ky. 706, 208 S.W.2d 723, 724: "However, it is equally correct to say that in forcible detainer cases there may frequently be a necessity of showing some vestiture of title as a preliminary step for establishing a right of possession. Right of possession, which is the very heart of forcible detainer, ordinarily travels along with right of ownership. And so it may become necessary in one of these cases to show right of ownership in order to show right of possession."

It is always a relevant inquiry, on a plea of not guilty in a forcible entry proceeding, whether one is in actual possession of the premises as well as whether the other forcibly entered thereon. Two of the chief issues around which much of the testimony revolved were, first, whether appellants had entered upon and taken possession of the land in dispute and, second, whether they had drilled an oil-well on this same land. After all the evidence was in, the lower court instructed the jury, on the issue of title and possession, as follows: "The Court instructs the jury that one proceeded against by a writ of forcible entry cannot justify his entry by showing he has title. Title is not involved in such proceeding. Any papers or documents offered before you in the trial of this case by either party shall be considered by you solely for the purpose of showing the extent of possession of such party."

It appears obvious that the jury found for appellees upon the basis that appellants were not in actual possession of the disputed property. It could scarcely determine the right of possession separate and apart from the right of ownership. This case cannot be distinguished in principle from Richie v. Owsley, 137 Ky. 63, 121 S.W. 1015, 1016, wherein it was stated: "It is not competent to try the title in this character of proceeding, but because of the peculiar situation, the fact of where the legal title was then vested is material, indeed is necessary to be ascertained, as upon it alone depends the question, one of mixed fact and law, whether Owsley was in actual possession of the premises when Richie entered."

We cannot say in the case at bar that title evidence was improperly admitted under the rule just stated. Nor can we assume, after a review of the entire record, that the proceeding was one to quiet title.

When we examine the second complaint of appellants, we observe that appellants' objection was confined almost entirely to certain preliminary statements made by counsel for appellees, which remarks were nothing more than comments on the instructions of the lower court and the issue raised in the case. His first utterance was: "This case, as you have heard from the Judge of this Court, is not one involving title". The language that followed was in a similar vein, and we are unable to infer a prejudicial result from this line of argument. Counsel for appellees later on said, "The plaintiffs come from Indiana and Ohio and come in here to sue a man that lives in this county", to which appellants objected. We do not consider this a fair statement to make before the jury. However, the remark was not outside the record, since the proof showed the residence of appellants to be in Indiana and Ohio.

It is obvious that appellants' contention that they were entitled to a directed verdict is untenable in view of the conclusion we have reached.

Wherefore, the judgment is affirmed.