# Kentucky Union Company v. Judith Hevner (formerly Judith Ison) and Matilda Hudson (formerly Matilda Ison).

(Decided November 25, 1924.)

## Appeal from Perry Circuit Court.

1. Jury—Defendants in Trespass to Try Title, Where Injunctive Relief was Ancillary, Held Entitled to Jury Trial.—Defendants in action in nature of trespass to try title, where injunctive relief was ancillary, held entitled to jury trial.

2. Trial—Motion for Transfer to Ordinary Docket for Jury Trial Held Properly Granted, where Motion was Made when Answer was Filed.—In action in nature of trespass to try title, though in form one for injunction, transfer of action, on defendants' motion, to ordinary docket for jury trial, held proper, where motion to transfer was made when defendants filed their answer.

3. Trial—Construction of Written Instrument is for Court, Not for Jury.—Construction of written instrument is for court, not for jury.

4. Judgment—Final Location by Court of Appeals of Patent is Controlling, in Absence of Showing of Mistake in Location.—When an old patent is finally located by Court of Appeals, the location so found governs unless it is shown to be erroneous, so that, in subsequent action involving practically the same evidence, such prior location should have been adhered to, and it was error to submit the question of location to jury.

5. Boundaries—Surveyor Who Does Not Run a Line Does Not Establish a Location to be Followed.—Where lines are run by a surveyor his real location will always be followed; but, where he does not run a line, there is no location by him to be followed.

6. Public Lands—Title From Commonwealth Depends on Record.—Title from Commonwealth depends on the record, and not on the line a person, who claims land covered by his patent, erroneously conceives the patent calls for.

7. Adverse Possession—Law is for Court, and Facts for Jury.—Law is for court, and facts for jury; hence it was error to submit to jury question of adverse possession without any instruction defining extent of possession where, under the evidence, this left law to jury.

8. Adverse Possession—When Possession of Junior Patentee Restricted to Property Inclosed, Stated—Entrant upon a boundary under a junior patent, which is entirely or partly within a senior grant or survey, is deemed in the actual possession of only so much of the land as he actually incloses, if the owner of the senior grant is then in the actual possession of his boundary, or if he enters thereon (within the lap) before the junior patentee has acquired title by adverse possession.

9. Adverse Possession—Effect of Adverse Entrant's Possession of Land to which Another has Title and Portion of which Latter Occupies, Stated.—Where legal title holder occupies any portion of land covered by his deed, his possession is actual, coextensive with boundaries stated in conveyance, and adverse entrant is deemed to acquire actual possession only of land of which he disseizes the legal title hoder, by an actual inclosure or other equivaent physical occupancy.

10. Adverse Possession—Effect of Possession of One, Claiming Title Under Deed of Patent, with Intent to Possess to Extent of Boundaries, Stated.—One entering into possession of tract of land, claiming title under a deed or patent, with intent to hold and take possession of it to extent of his boundaries, is in actual adverse possession of entire tract to boundaries of his deed or patent, to the extent that the boundary of land is not in the actual possession of another.

11. Adverse Possession—One's Possession of Land Under His Patent is Coextensive with His Patent Properly Located.—One's possession of land under his patent is by construction of law coextensive with his patent properly located, though such person erroneously supposes land not to be included in patent.

12. Adverse Possession—Possession of Land Under Senior Patent Held to Extend to All Land Covered by Larger Junior Patent.—Where one who lived on a senior patent for 1,000 acres took out a patent for 12,000 acres of vacant land (which included land embraced in senior patent) but improved only the land covered by senior patent, his possession extended to all of the 12,000 acres as against one having no title.

13. Public Lands—Statue Voiding Patent as to Land Previously Surveyed or Patented Held Inapplicable Where Holder of Older Survey or Patent Takes New Patent.—Statute voiding any patent as to land previously surveyed or patented is for protection of person holding older survey or patent, and does not apply when such holder takes out a new patent, embracing older survey.

14. Public Lands—One Holding Land Under Deeds Held Not to have Waived Rights by Taking out Junior Patents.—One holding land under deeds did not waive his rights under his deeds by thereafter obtaining junior patents so far as they covered land then vacant.

15. Champerty and Maintenance—Adverse Possession, Within Statute Voiding Sales and Conveyances of Land in Adverse Possession of Another, Must be Actual.—Adverse possession, within Ky. Stats., section 210, avoiding a sale and conveyance of land in adverse possession of another, is not the same as under the statute of limitation, but must be actual; possession by construction of law being insufficient.

16. Champerty and Maintenance—Commissioner's Deed Made Pursuant to Written Contract Held Not Void in Absence of Actual Adverse Possession at Date of Contract.—Commissioner's deed to plaintiff, executed pursuant to written contract dated 14 years

previously, when there was no actual adverse possession, held not void under Ky. Stats., section 210.

SAMUEL M. WILSON and WOOTTON, SMITH & WOOTTON for appellant.

P. T. WHEELER, H. C. FAULKNER, FARMER EVERSOLE, J. C. JONES, W. T. FOWLER, MORRIS & JONES, and O'REAR, FOWLER & WALLACE for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

The Kentucky Union Company brought this action against Judith Ison, etc., alleging that it owned and was in the actual possession of a boundary of land in Perry county within the Ison Stamper patent for 12,000 acres and being all that part of the patent which is in the present county of Perry. They alleged that the defendants were trespassing upon the land and prayed judgment for the trespasses committed and an injunction restraining future trespasses. The defendants by answer controverted the allegations of the petition and set up that they were the owners and in possession of a boundary of land, described in their answer, containing about 500 acres, and that they and those under whom they claimed had been in the adverse possession of this land for more than thirty years. On motion of the defendants the case was transferred to the ordinary docket for a jury trial. The jury to whom the case was submitted found a verdict for the defendants. The plaintiff appeals.

The court did not err in transferring the action to the ordinary docket for a jury trial. The motion for the transfer was made by the appellees when they filed their answer, as is shown by the order filing the motion to transfer. The object of the suit was not one purely of injunctive relief. The action was in the nature of trespass to try title; the injunctive relief was only ancillary to the relief sought. The issue was distinctly a legal one on which the defendants were entitled to a jury trial. Chenault v. Eastern Kentucky Timber Co., 119 Ky. 170; Smith & Nixon v. Curry, 148 Ky. 166; Harold v. Armstrong, 177 Ky. 317.

The Isom Stamper 12,000 acre survey was made July 24, 1846; the patent was issued on February 5, 1848. Stamper settled on his patent and while he was so living on it the county of Letcher was formed, which embraced

a part of his patent boundary. After this on May 3, 1882, Stamper, while so holding the land, sold to Thomas Stewart by written contract all that portion of the survey lying in Perry county. On June 1, 1882, he made Stewart a deed, but the calls of this deed did not correctly describe the land sold by the contract. Stewart conveyed the land to the Kentucky Union Company and it filed its petition in equity on October 5, 1896, in the Perry circuit court against Isom Stamper for the correction of the deed, and in that action a deed was made to it for the land embraced by the patent according to its calls and lying in Perry county. In that action Stamper filed an answer in which he said that he asserted no claim to any part of the land, and on this answer judgment was rendered for the plaintiff as prayed in the petition. Holding this judgment valid this court in Kentucky Union Co. v. Cornett, 112 Ky. 677, said:

> "The judgment in the disclaimer suit, therefore, created an estoppel running with the land, operating to vest in appellant all the title of Stamper to the land in controversy; and whatever may have been the proper construction of the deed made by him, without that judgment, it must now be held to pass to appellant, by way of estoppel, the entire title of Stamper to the land. Stamper, having taken possession and actually settled on his patent, was in possession to the extent of his boundary."

In Swift Coal Co. v. Sturgill, etc., 188 Ky. 694, this court had before it the proper location of the Stamper 12,000 acre survey, and the proper location of the patent was determined. The circuit court erred in submitting to the jury the proper location of the patent, the evidence in this case being practically the same as in that case. The rule is well settled that the construction of a written instrument is for the court and is not to be submitted to the jury. The location of this patent turns upon the construction of its terms, for the fact is the surveyor only ran the first two lines and laid down the other lines by protraction. We do not find any substantial conflict in the testimony on this subject. The plaintiff's testimony is to the effect that when they reached the third corner the surveyor said it was unnecessary to run any further and they did not go any further but simply set the compass there on the course indicated by Stamper as the di-

rection in which he wanted the line to run. Stamper is now dead and his sons, who were present, testify that their father told them to go home and feed when they reached the third corner; that they went home to feed and about the time they got home the surveying party came in. Nobody testifies that any further surveying was ever done and nobody contradicts the positive testimony that the party broke up at the third corner and went home. It is true there is testimony as to marked trees on the ridge and that Stamper afterwards claimed this ridge as the line, but there is no proof that these trees were marked as the lines of Stamper's survey. On the contrary, it is shown that there were other surveys calling for this ridge, and the reasonable conclusion is that these trees were marked on those surveys. In addition to this a number of them were blocked and found not to be as old as the Stamper survey. Where lines are in fact run by the surveyor, his real location will always be followed, but where he does not in fact run a line there is no location by him to be followed. To locate the patent along the ridge, as claimed by the defendants, is to ignore entirely the calls of the patent, the accompanying plat and the plain purpose to make a survey of a given shape containing the quantity of land specified. To so locate the patent is to give the survey an entirely different shape and make it include twice as much land as called for. Uncertainty in the location of patents breeds litigation, unsettles the value of property and retards the development of the state. It is a sound public policy that when one of these old patents is finally located by the court of last resort this location should be adhered to unless it is shown that a mistake was made. The proof here being practically the same as was before this court in the case referred to, the location of the patent in that case must be adhered to. The circuit court should so have instructed the jury and should not have submitted to them the location of this patent. The patent for 12,000 acres as located by this court includes all the land in controversy. It is not material that Isom Stamper did not know the true location of the lines of his patent and claimed to the top of the ridge around him, as do most landowners in the mountains under like circumstances. He claimed the land covered by his patent although he was in error as to the location of some of the lines. Title from the Commonwealth depends on the record. Were

the rule otherwise, no one could safely buy relying on the record.

Sampson Brashears held patents from the Commonwealth, some of which were older than the Isom Stamper 12,000 acre patent and some were not so old. He lived upon a large boundary that he claimed, which he divided among his children. He conveyed to John Brashears, his son, on July 22, 1875, a part of this land; John Brashears divided his land at his death among his children and on January 11, 1882, deeded a part of it to Gideon Ison, who was the husband of his daughter. Gideon Ison in the division of his estate deeded to appellees on March 30, 1903, the land in controversy. A part of this land was embraced in junior patents taken out by Gideon Ison after he received the deed from John Brashears, and the evidence is not clear as to what part of the land in controversy is embraced in the surveys made by Sampson Brashears before the Ison Stamper 12,000 acre survey was made. On another trial, if the evidence is conflicting on this subject, the proper location of these senior surveys will be submitted to the jury.

The circuit court by its instructions submitted to the jury the question of adverse possession without any instruction defining the extent of possession under the evidence and refusing all the instructions asked by appellant on this subject. This, under the proof in the record, was to leave to the jury the law and facts of the case. The law is for the court; the facts are for the jury.

The rules as to extent of possession of the senior and junior patents have been thus laid down by the court:

"If the entrant goes upon a boundary under a junior patent, which latter is entirely or partly within a senior grant or survey, he will be deemed to be in the actual possession of only so much of the land as he actually encloses, if the owner of the senior grant is then in the actual possession of his boundary; or if the owner of the senior grant be not in the actual possession of the boundary in his grant, but enters thereon (within the lap) before the patentee of the junior grant has ripened a title by adverse possession, the latter will *ipso facto* be restricted to his actual close. Rulings of this court to the above effect are so numerous and consistent that it is not

thought necessary to cite the cases here." Richie v. Owsley, 137 Ky. 68, 143 Ky. 1.

"But where the legal title holder occupies any portion of the land covered by his deed, his possession is actual and coextensive with the boundaries stated in the conveyance; and in such case, the adverse entrant is deemed to acquire actual possession of only so much of the land as he disseizes the legal title holder of, by an actual enclosure or other equivalent physical occupancy. Richie v. Owsley, 137 Ky. 63; Mann v. Cavanaugh, 110 Ky. 776, 62 S. W. 854, 23 R. 238; Phillips v. Beattyville M. & T. Co., 88 S. W. 1058, 28 R. 12; Meade v. Ratliff, 133 Ky. 411, 118 S. W. 271; Fuller v. Mullins, *supra;* Hall v. Blanton, 25 R. 1400, 77 S. W. 1110; Combs v. Stacy, 147 Ky. 222, 144 S. W. 24." Hopson v. Cunningham, et al., 161 Ky. 162.

"It is the well settled law of this state, that where one enters into the possession of a tract of land, claiming title under a deed or patent, with the intention to hold or take possession of it to the extent of his boundaries, he is in the actual adverse possession of the entire tract to the boundaries of his deed or patent, to the extent that the boundary of land is not in the actual possession of another. Duff v. Hagins, 146 Ky. 792; Slavey v. Dority, 142 Ky. 640; White v. McNab, 140 Ky. 828; Richie v. Owsley, 137 Ky. 63; Taylor v. Burt, &c., Lumber Co., 109 S. W. 348; King v. Sec, 87 S. W. 758; Middlesboro Water Works Co. v. Neal, 105 Ky. 586; McLawrin v. Salmons, 11 B. M. 96; Childs v. Connelly, 9 Dana 385; Harrison v. McDaniel, 2 Dana, 348; Moss v. Scott, 2 Dana 271; Taylor v. Buckner, 2 A. K. M. 18; Fox v. Hinton, 4 Bibb 559." Caughlin v. Wilson, 167 Ky. 44.

Isom Stamper in fact for years claimed that his 12,000 acre patent included only land on the waters of Turkey creek. He then claimed to the top of the ridge all around and not beyond. This was his understanding of the location of his patent. The land in controversy lies beyond the ridge at the head of Turkey creek, but is within the patent as located by this court. His possession under his patent is by construction of law coextensive with his patent properly located, as he claimed under his patent the land the state granted to him thereby.

Were the rule otherwise, the record would not control rights, and a purchaser could never know from the record what he was buying.

Isom Stamper was living on a senior patent for 1,000 acres when he took out the patent for 12,000 acres which lapped around his old patent and included this land. All of his improvements were on the patent for 1,000 acres, and it is insisted that while so living there his possession did not extend beyond his 1,000 acre patent. This would be true as against any one having title, but the land being then vacant he was in possession of all the land covered by his 12,000 acre patent. Miniard v. Napier, 167 Ky. 208. The court should have so instructed the jury.

It is true the statute provides that a patent shall be void as to any land previously surveyed or patented, but the statute is for the protection of the person holding the older survey or patent. It has no application when he takes out the new patent, for he had the right to strengthen his title without losing any rights he then had, and he was entitled to all the rights under his new patent that he would have if his old patent were not in existence. He is in fact in possession under both patents when the possession is vacant where the second patent is taken out.

The same rule applies to the junior patents taken out by Gideon Ison so far as they covered land that was then vacant. The taking out of these patents was not a waiver of the rights he then had under the deeds theretofore made.

By section 210, Kentucky Statutes, all sales and conveyances of land in the adverse possession of another are void. But adverse possession under the statute is not the same as under the statute of limitation. It must be actual; possession by construction of law is insufficient:

"The champerty statute is a highly penal one in its effect. Before its severe penalty of forfeiture of title should be put into operation in a given case, the party to be subjected to it should have a fair opportunity for knowing that he was conveying lands then held and claimed adversely by another. And this adverse possession must be at the time of the hostile conveyance. Generally, the statute is invoked in aid of one in possession under an inferior title: for one with the superior title can safely rely on his title alone in such case. A previous occupancy

or claim, however notorious and sufficient, will not therefore avail one pleading the statute. It must be such actual adverse occupancy, contemporaneous with the deed sought to be evaded by it, as would have brought to the notice of an inquirer or intending purchaser the fact of the occupier's hostile claim.'' Mayes v. Kenton, 64 S. W. 728.

To the same effect see Interstate Investment Co. v. Bayley, 93 S. W. 578; Krauth v. Hahn, 139 Ky. 612; Brown v. White, 153 Ky. 452; LeMoyne v. Litton, 159 Ky. 655.

There was no open demonstration of actual occupancy by Isom Stamper or by appellant at the time any of the deeds under which appellees' claim was made. The commissioner's deed made in 1896 to appellant was made pursuant to the written contract made in 1882, when there was no actual adverse possession, and the statute does not apply to it. Greer v. Wintersmith, 85 Ky. 516; Abbott v. Perkinson, 144 Ky. 495.

Under the evidence, as we understand it, no instruction under the statute should be given. If on another trial there be any evidence warranting such an instruction as to any part of the land, the instruction should be as above indicated.

The other matters complained of will not perhaps be material on another trial. All other questions than those above decided are reserved.

Judgment reversed and cause remanded for a new trial. Whole court sitting.