## Jones et al. v. Hargis.

May 2, 1941.

B. J. Bethurum for appellant.

R. C. Tartar for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

This appeal is from a judgment for appellee after a jury verdict in an action of trespass to try title filed by her against the appellant, Horace A. Jones, and others who were cutting timber for him on the disputed land. On the trial the controversy became one as to the ownership of land within an interference between the deeded boundary of appellant, Jones, and the boundary of appellee, Martha Hargis, claimed by her under the Thomas Hail patent for 50 acres issued in the year 1860. Appellant's record title went back only to the year 1875 to a deed from J. Edwards to W. Edwards.

In the Hail 50-acre patent the land was described by courses and distances. When Thomas Hail conveyed the 50-acre patent to Gregory in the year 1896, the description was:

> "Two-third interest in three tracts of land, lying and being in Pulaski County, State of Kentucky, on the waters of Buck Creek, and known as the Mill Property, near the mouth of Hound Hollow—two-thirds interest in mill known as Hail's Mill is also included."

Substantially the same description is used in subsequent conveyances from Gregory down to William Hargis in 1898. William Hargis died, claiming to be the owner of the patent, and deeds were executed by all except one of his heirs at law to appellee. Deeds were also executed to her by the Thomas Hail heirs for the one-third undivided interest retained by him when he conveyed to Gregory so that appellee had deeds purporting to convey to her six-sevenths undivided interest in the Hail patent. However, the deeds to appellee merely described the land conveyed as bounded by the abutting landowners and the land was referred to as bounded on the north and east by the lands of W. F. (Bill) Jones, a predecessor in title of appellant. Buck Creek runs approximately north and south and practically through the center of the 50-acre patent and appellant's deed calls for Buck Creek as his western boundary so that the interference is that portion of the Hail patent east of Buck Creek.

W. Edwards, to whom appellant's deeded boundary

was conveyed in the year 1875, conveyed it to Bill Jones in March, 1896, and by mesne conveyances appellant acquired it. The evidence discloses that shortly after Bill Jones acquired title he entered within the interference and constructed a dwelling house. He also cleared up a number of acres within the interference, variously estimated by the witnesses at from five to fifteen acres. The evidence shows that from the time Jones built the dwelling house he and his successors in title down to and including appellant were in the actual adverse possession of portions of the interference. Appellee contends that such adverse possession was not shown to be continuous for more than 15 years and this contention will be adverted to later.

It is first contended by appellant that appellee did not establish good record title to the patent for the reason that the description in the deed from Thomas Hail, the patentee to Gregory, which is substantially the description in subsequent deeds down to Bill Hargis, was so indefinite and uncertain as to render the deeds void. In support of this contention numerous cases are cited in which the description was much more vague and uncertain than the one we are dealing with. We find the rule to be that a deed is not void for uncertainty if from the description contained in the deed the property can be located. Foster v. Roberts et al., 179 Ky. 752, 201 S. W. 334, 335. In that case the description was "my undivided interest and share to a certain tract or parcel of land of which my said father, Stephen Owens, aforesaid, died seized and possessed, lying on the waters of the Little South fork of Cumberland river in Wayne county, containing about 365 acres in all." It was held that this description was sufficient. Here the description was of land on Buck Creek known as the Hail's Mill property near the mouth of Hound Hollow. This was such a description as rendered the property easily capable of being located.

It is next contended that as the deeds to appellee called for the Jones land on the north and east, appellee took title only to the line called for in the Jones deed, which was Buck Creek, and that therefore she acquired title only to the patented land lying west of Buck Creek. Had appellee's deed called with the line of the Jones deed, this contention might be well founded but the calls of appellee's deeds were with the lands of W. F. Jones.

This we construe as meaning such lands as W. F. Jones actually owned so, after all, we are stll confronted with the question as to what lands W. F. Jones actually owned. We think there is no merit in this contention and that appellee's deeds should be construed as extending her boundaries to such land as Jones actually owned.

It is next contended by appellant that as his predecessors in title made an entry within the interference and built a house more than 40 years ago and as he and his predecessors in title have been in the actual adverse possession of a portion of the interference for 40 years or more claiming under a deed calling for Buck Creek as the western boundary, such actual possession extends to all the land included within the boundary of appellant's deed and that therefore he has title to the land within the interference. It is the well-settled rule in the ordinary case that one who enters into actual adverse possession of land under a deed describing land so that it can be run by a surveyor will be held to be in possession to the extent of the boundary described in the deed although the boundary described might be wholly insufficient to constitute a well-marked boundary if there was no deed. Burt & Brabb Lumber Co. v. Sackett et al., 147 Ky. 232, 144 S. W. 34; Charles v. McCoy, 220 Ky. 439, 295 S. W. 407. But this rule has no application where a junior title holder is claiming land within an interference between his deeded boundary and the boundary of one who has made a prior entry on land to which he holds a record title from the Commonwealth, as did the appellee here. Here the appellee's predecessor in title entered and took possession of the land covered by the Hail patent prior to the entry by appellant's predecessor within the interference under a junior title. This being true, the possession of appellee's predecessors in title was actual and co-extensive with the boundaries of the patent under which they held title and the subsequent entry of appellant's predecessor under his deed within the interference did not operate to divest appellee's predecessors in title of their prior and existing possession beyond the actual close of appellant's predecessor. Foster v. Roberts et al., supra; Bates v. Wright, 201 Ky. 430, 257 S. W. 45; Richie v. Owsley, 137 Ky. 63, 121 S. W. 1015. However, since appellant and his predecessors in title have been in the continuous, actual adverse possession of a portion of

the land within the interference for 40 years or more, appellant's title by adverse possession is good as to that portion of the interference on which the house was built and of which actual possession was taken by clearing and cultivating the land. The evidence is rather indefinite as to the portion actually cleared by appellants and his predecessors but from a map filed in evidence by a surveyor it appears to be about the north one-half of the interference lying east of the steep bluff or cliff bordering on Buck Creek.

Since, as we have pointed out above, appellant and his predecessors in title have for 40 years or more been in the actual adverse possession of the cleared land and the land on which the house and other improvements were erected and, since actual adverse possession was not shown as to other portions of the land within the interference, it was the duty of the trial court to direct a verdict for appellant as to the cleared land and for appellee as to the remainder of the interference.

As mentioned above, it is the contention of appellee that continuous, actual adverse possession was not established for a period of more than 15 years, this contention being based on the fact that Bill Jones, appellant's predecessor in title, who testified that he built the house on the interference more than 42 years ago, lived in the house for only 13 years and the next actual occupancy of the house was that of James Adams, a tenant of appellant, who testified that he had been residing in the house for 10 years. It is true that there was a failure to prove actual occupancy of the house from the expiration of the 13-year period during which Bill Jones lived in it to the time that Adams moved in, but residence on land is not essential to constitute actual adverse possession— even fencing is not essential and holding and claiming by cultivation is sufficient. Abbott v. Perkinson, 144 Ky. 495, 139 S. W. 745, Ann. Cas. 1913A, 747. The evidence shows that from the time Bill Jones ceased to live in the house he continued to use and cultivate portions of the land. He also *continuously* cut and removed timber. As a matter of fact another witness testifies that Bill Jones lived in the house 20 years or more. It is clear from the evidence as a whole that appellant and his predecessors in title were in continuous, actual adverse possession of the cleared land for a period of at least 40 years, and that thereby appellant established good

title by adverse possession to this portion of the interference.

It is further contended by appellant that by reason of Kentucky Statutes, Section 210, appellee's deeds were champertous and void to the extent they purported to convey the land within the interference because such land was in the adverse possession of appellant's predecessor in title when the deeds were executed. This contention is correct only to the extent that the interference was in the *actual* adverse possession of appellant's predecessor by enclosure or other equivalent occupancy. Richie v. Owsley, supra; Kentucky Union Company v. Hevner, 210 Ky. 121, 275 S. W. 513. As to that portion of the interference in the adverse possession of appellant's predecessor by actual, physical occupancy, we have held above that appellant had title by adverse possession.

Another error necessitating reversal is that in instructing as to the issue of adverse possession the jury were told to find for the plaintiff unless they believed that the defendant had been in the actual adverse possession of the land in controversy for 15 years or more. Assuming that there was a submittable issue, the land in controversy was all the land within the interference and by this instruction the jury were limited to finding all or none of the interference for the defendant. The instruction should have been so framed as to permit a finding for the defendant as to any portion of the interference of which he and his predecessors had been in the actual adverse possession for 15 years or more.

If the evidence should be substantially the same on the next trial, a verdict should be directed for the appellant as to the cleared land within the interference and for appellee as to the remainder. If the parties are unable to agree as to the respective portions, a surveyor may be appointed to establish by survey the cleared and uncleared portions.

Judgment reversed, with directions to grant the appellant a new trial, and for further proceedings consistent with this opinion.