**Johnnie WELLS et al., Appellants,**

**v.**

**Charlie WELLS, Appellee.**

Court of Appeals of Kentucky.

April 21, 1961.

Milton J. Luker, Charles R. Luker, Jr., London, for appellants.

William J. Weaver, London, Zeb A. Stewart, Frankfort, for appellee.

MOREMEN, Judge.

Appellee, Charlie Wells, since about October 13, 1939, had resided on an acre and a half tract of land in Laurel County. The record title to the property was vested in his son, Johnnie Wells, by virtue of a deed executed on the above date by J. C. Barnes and others. On March 28, 1956, Johnnie Wells conveyed the property to Matt and Bessie McVey.

Charlie Wells, by this action, sought to have the deed from Barnes (October 13, 1939) declared to be a deed of trust with him as the beneficiary, on the averment that he paid the full consideration for the conveyance and that it was made under the agreement that Johnnie Wells would hold the property in trust for him. He also claimed the property by adverse possession. Further, he asked that the deed from Johnnie Wells (March 28, 1956) to the McVeys be set aside.

The case came on to be tried and although no demand was made by either party for a jury trial, it being principally a suit in equity, the court did impanel an advisory jury, and certain questions were propounded to it. After the jury's verdict the court entered a judgment which reads in part as follows:

"Interrogatory #1

"Do you find from the evidence that on March 30, 1956 when the defendant, Johnnie Wells, and his wife executed the deed to the defendants, Matt McVey and Bessie McVey, his wife, that the plaintiff, Charlie Wells, was in the actual possession of and claiming to own the property in controversy in this action openly, adversely to a well marked and defined boundary?

"Answer: Yes

"/s/ Leander Jones, Foreman.

"It is, therefore, ordered and adjudged that the deed from Johnnie Wells and Irene Wells, his wife, to Matt McVey and Bessie McVey, his wife, dated March 28, 1956, which is duly recorded in Deed Book 132, page 191, Laurel County Clerk's Office, be and the same is hereby cancelled, set aside and held for naught and the Clerk of the Laurel County Court is directed to indorse the same upon the margin of the recorded deed.

"It is further adjudged that the deed from J. C. Barnes, et al, to Johnnie Wells dated October 13, 1939, and duly recorded in Deed Book 85, page 524, be and the same is hereby held to be a deed in trust to Johnnie Wells and Irene Wells, for the plaintiff, Charlie Wells, and the said Johnnie Wells and Irene Wells are now ordered and directed to immediately execute a deed to the said Charlie Wells * *."

Appellants urge as grounds for reversal that the trial court erred, (1) in propounding the interrogatory quoted in the judgment above; and (2) in admitting in evidence statements made by J. C. Barnes, now deceased.

■ It is difficult to decide which issue the court had in mind when the advice of the jury was sought under interrogatory No. 1. Appellee had specifically alleged adverse possession by limitation and had sought reformation of the deed of conveyance on the ground that it was, in fact, a deed of trust. In addition the pleading set forth facts which, if true, would invite the application of the champerty statute, KRS 372.070. It is not necessary to plead

this statute in order to rely on it. Davis v. Gross, 305 Ky. 787, 205 S.W.2d 693.

■ Appellant contends that the interrogatory fails to submit the actual elements necessary to establish ownership of the property by adverse possession because it does not require a finding of actual possession of the land adverse to all others continuously for a period of fifteen years. That is true, if the court asked advice on this issue. It seems fairly certain, however, that the court was merely requesting a factual determination before deciding whether the terms of the champerty statute applied. If this assumption is correct the interrogatory is sufficient because, as was said in Kentucky Union Co. v. Hevner, 210 Ky. 121, 275 S.W. 513, 516, adverse possession under this statute is not the same as under the statute of limitations, and:

> "It must be such actual adverse occupancy, contemporaneous with the deed sought to be evaded by it, as would have brought to the notice of an inquirer or intending purchaser the fact of the occupier's hostile claim. Mayes v. Kenton, 64 S.W. 728, 23 Ky. Law Rep. 1052."

■ Under this statute (KRS 372.070) possession by a third party need not be for any specific length of time. To render the conveyance champertous, and therefore void, it is sufficient if the adverse character of the possession is such as would ripen into a fee simple title under the limitation adverse possession rule had it continued uninterruptedly for the period prescribed. Phillips v. American Ass'n, Inc., 259 Ky. 402, 82 S.W.2d 456; and Kentucky West Virginia Gas Company v. Woods, 6 Cir., 110 F.2d 94.

■■ Even though unpled, reliance may be had upon the champerty statute (Davis v. Gross, 305 Ky. 787, 205 S.W.2d 693) and we believe the court, under the evidence in this case, properly requested advice from the jury on this issue by interrogatory No. 1. In any event, the court is not bound by an advisory jury verdict and, therefore, the interrogatories used by him are not subject to the rigid requirements of instructions given in a case where the issues of fact are triable by a jury as a matter of right.

Appellant contends that certain testimony introduced in behalf of appellee was incompetent. This evidence pertained to the conversation between Cal Barnes and Charlie Wells at the time the original deed was executed to Johnnie Wells on October 13, 1939. This testimony given by Cal Barnes' sister, Lucy Burdine, is typical of that given by other witnesses:

> "Tell the jury what you heard Cal Barnes say about that transaction.
>
> "Objection.
>
> "About that land sale.
>
> "A. All I can remember. I heard them talking and Cal said, 'I know where you got the $500.00 but I don't know where you got the other hundred'. Didn't know anything about the trade or anything. I was here on a visit. I heard afterward he had sold Charlie the land.
>
> "How did you learn afterwards? A. I heard Cal talking about selling the land to Charlie.
>
> "If I understand you correctly, on one occasion you heard your brother, Cal Barnes, say he knew where he got the $500.00 but not the $100.00?
>
> "Objection.
>
> "Yes."

(Johnnie Wells testified that he paid the purchase price)

■ None of the witnesses were interested in the litigation and they were not testifying for themselves. Therefore, the provisions of KRS 421.210 do not apply.

■ Some question of whether this type of testimony is hearsay may be suggested.

We are of opinion that in a case where the substance of an agreement is oral it is competent to prove the act itself.

Jones' Commentaries on Evidence (2d ed.) § 1091, says:

"It is hardly necessary to cite authorities to the obvious proposition that when proof is to be made of a parol contract, or when for other reasons the statements of a person are relevant, such statements may be proved by third persons who were present as well as by the one who used the language. In such case the statements are not hearsay, but substantive evidence."

See Combs v. Roark's Adm'r, 221 Ky. 679, 299 S.W. 576, Syl. 3. See also Workman v. Hargadon's Adm'r, Ky., 345 S.W.2d 644. The evidence was competent insofar as it related to the statement made at the time the deed was executed. The reiteration of the statement later, while perhaps incompetent, was not prejudicial.

The testimony adduced by the above witnesses was of little value and could well have been disregarded—and perhaps was—by the chancellor. There is strong evidence in this record to show that appellee Charlie Wells exercised strong domination over the land from the date it was purchased from Barnes. Various actions of the son, Johnnie Wells, indicated that the property belonged to his father.

The McVeys, who were vendees under the deed from Johnnie Wells, lived on an abutting tract of land and during the years had opportunities to observe Charlie Wells exercise all the prerogatives of ownership which acts were more than enough to put them on inquiry concerning the true ownership.

We are of opinion that the chancellor's conclusion is supported by strong evidence and should not be disturbed. CR 52.01.

Judgment affirmed.