Brent **HENNINGER** and Mary Kay **Henninger, Appellants,**

v.

Suzy **BREWSTER, Appellee.**

No. 2010–CA–001110–MR.

Court of Appeals of Kentucky.

Jan. 13, 2012.

Nicholas C.A. Vaughn, Somerset, KY, for appellants.

Paul F. Henderson, Somerset, KY, for appellee.

Before ACREE, CLAYTON and WINE,[1] Judges.

## OPINION

ACREE, Judge:

Appellants Mary Kay and Brent Henninger appeal the Pulaski Circuit Court's entry of summary judgment in favor of Appellee Suzy Brewster claiming the circuit court erred in determining no genuine issues of material fact exist with respect to Appellee's champerty defense under Kentucky Revised Statute (KRS) 372.070(1). Finding no error, we affirm.

## I. *Facts and Procedure*

In 1996, James and Jettie Brewster purchased Lot 31, Section A, of the Diamond Acres Subdivision in Burnside, Kentucky (Lot 31) from Raymond Stacy. Shortly after purchasing the property, James and Jettie conveyed the property to their son, Freddie Brewster. In 1997, Freddie purchased a mobile home and placed it on the

lot. Unbeknownst to Freddie, the mobile home occupied not only Lot 31 but also a portion of its neighboring lot, Lot 32. Since that time, Freddie and members of his family, including Appellee Suzy Brewster, have continuously utilized the mobile home.

On April 12, 2004, Freddie entered into a contract for deed for Lot 31 with Appellee Brewster.

Subsequently, on December 13, 2005, the Henningers purchased Lot 32 from the Corbitt Living Trust and Phyllis Corbitt[2] via a limited warranty deed. After purchasing Lot 32, the Henningers discovered that a portion of Brewster's mobile home encroached on Lot 32.[3] Consequently, on April 3, 2008, the Henningers filed a declaratory judgment action in Pulaski Circuit Court, pursuant to KRS 418.040, seeking a declaration that they are the legal owners of Lot 32, including the portion upon which Brewster's mobile home is located. Brewster promptly answered the complaint raising, *inter alia*, adverse possession and champerty as defenses.

In September 2008, the parties began discovery. Thereafter, in March 2009, the parties filed cross-motions for summary judgment. Specifically, the Henningers claimed there was no genuine issue of material fact that they were the title owners of Lot 32, that Brewster's mobile home encroached on their property, and that she and her predecessors-in-interest had not adversely possessed the property for the requisite fifteen years; as a result, argued

1. Judge Thomas B. Wine concurred in this opinion prior to his retirement effective January 6, 2012. Release of the opinion was delayed by administrative handling.

2. We refer to these parties jointly as the Corbitt Living Trust. Where the context requires, we will differentiate between the trust and its trustee, Phyllis Corbitt.

3. The parties dispute whether Brent Henninger discovered that the mobile home resided partly on Lot 32 before or after purchasing the lot. As the resolution of this dispute is not germane to the issues before us, it will not be discussed.

the Henningers, they were entitled to judgment as a matter of law. On the other hand, Brewster claimed the Henningers' deed was champertous and void under KRS 372.070(1) because Lot 32, at the time the Corbitt Living Trust conveyed it to the Henningers, was in the adverse possession of Brewster and her brother, Freddie, before her.

Six months passed.[4] On September 8, 2009, the Henningers renewed their motion for summary judgment. Following a hearing, they filed a second memorandum in support of their summary judgment motion and, in response, Brewster submitted two supplemental memoranda in support of her motion for summary judgment. As of December 29, 2008, the matter stood submitted.

On March 8, 2010, the circuit court granted Brewster's motion for summary judgment and denied the summary judgment motion filed by the Henningers. The circuit court concluded Brewster and her predecessor-in-interest, Freddie, adversely held the portion of Lot 32 upon which the mobile home was located since 1996 and, as a result, the deed conveying Lot 32 to the Henningers was champertous and void under KRS 372.070(1). The Henningers filed a timely motion to alter, amend, or vacate the judgment pursuant to Kentucky Rules of Civil Procedure (CR) 59.05. The circuit court denied the Henningers' motion; the Henningers promptly appealed.

As additional facts become relevant, they will be discussed.

## II. *Standard of Review*

The trial court's decision to grant summary judgment is reviewed *de novo. Harstad v. Whiteman,* 338 S.W.3d 804, 809 (Ky.App.2011). In reviewing a trial court's grant of a motion for summary judgment, we must ascertain "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996); CR 56.03. In doing so, "[t]he trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor." *Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky.App. 2001) (citing *Steelvest v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480–82 (Ky. 1991)). In discussing the word "impossible" as set forth in the summary judgment standard, the Kentucky Supreme Court has held it is meant to be "used in a practical sense, not in an absolute sense." *Lewis,* 56 S.W.3d at 436.

"The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present" evidence establishing a triable issue of material fact. *Lewis,* 56 S.W.3d at 436; *Steelvest,* 807 S.W.2d at 482. That is to say, "[t]he party opposing a properly presented summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing the existence of a genuine issue of material fact for trial." *City of Florence, Kentucky v. Chipman,* 38 S.W.3d 387, 390 (Ky.2001). The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." *Steelvest,* 807 S.W.2d at 480. "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial

---

4. This delay resulted, in part, from the Henningers' retention of new counsel.

court's decision and will review the issue *de novo." Id.*

With these standards as our guide, we review the circuit court's order granting summary judgment in Brewster's favor.

## III. *Analysis*

The Henningers contend the circuit court erred in granting summary judgment in Brewster's favor upon her defense of champerty under KRS 372.070(1) because Brewster's possession of a portion of Lot 32 was not hostile to the interest of the original grantor, Corbitt Living Trust. The Henningers' argument contains several subparts, namely: (1) the record is void of any evidence that Brewster's occupation of part of Lot 32 was hostile to its original grantor's interest; (2) Brewster failed to establish that it is impossible for the Henningers to produce evidence at trial negating the hostile element because if they were granted adequate time to conduct additional discovery, such evidence might be discovered; and (3) Brewster's mistaken belief that she and her family situated the mobile home solely on property owned by them, *i.e.* Lot 31, contradicts Brewster's claim that she adversely holds a portion of Lot 32.

In response, Brewster asserts that she, and her predecessor-in-interest, Freddie, have adversely held a portion of Lot 32 since 1996. Specifically, Brewster maintains her family placed the mobile home at issue in its current location in reliance upon boundary stakes purportedly identifying the boundary line between Lot 31 and Lot 32. Nonetheless, since that time, Brewster contends her family has adversely, continuously, openly and notoriously, and exclusively, possessed the mobile home and, in turn, the portion of Lot 32 on which it is located. As a result, Brewster

argues, the relevant portion of Lot 32 was under adverse possession at the time Corbitt Living Trust conveyed Lot 32 to the Henningers; consequently, the circuit court correctly determined the deed was champertous and void under KRS 372.070(1), but only to the extent of the adversely-possessed portion of the property conveyed by the deed.

▇▇▇ KRS 372.070(1) provides, in pertinent part, that "[a]ny sale or conveyance, including those made under execution, of any land, or the pretended right or title thereto, of which any other person has adverse possession at the time of the sale or conveyance, is void[.]" This statute, also known as the "champerty statute" operates to void a conveyance of land by a grantor to a grantee when such land is being held adversely by a third party. *See Cowherd v. Brooks,* 456 S.W.2d 827, 830 (Ky.1970). The policy and purpose underlying the champerty statute is to discourage litigation as well as the selling and buying of lawsuits. *See Great Western Land Management, Inc. v. Slusher,* 939 S.W.2d 865, 869 (Ky.1996); *Hensley v. Clay,* 306 Ky. 482, 208 S.W.2d 501, 502 (1948) (explaining the champerty statute's purpose "is to prohibit the purchasing of a suit or right of suing"). A claim of champerty may only be used, however, as a shield to or in defense of a claim, and may never be invoked affirmatively to claim title to land. *Ballard v. Moss,* 268 S.W.2d 35, 38 (Ky.1954).

▇▇▇ There are "several criteria which must be met in order to establish adverse possession under the champerty statute. The nature and elements of adverse possession are that it must be: actual possession; open and notorious possession; exclusive possession; hostile [5] possession,

---

**5.** The "hostility" requirement is often referred to as "adversity." Accordingly, the terms

and it must exist at the time of the conveyance claimed to be champertous." *Cowherd*, 456 S.W.2d at 830. However, "[u]nder this statute (KRS 372.070) possession ... need not be for any specific length of time. To render the conveyance champertous, and therefore void, it is *sufficient if the adverse character of the possession is such as would ripen into a fee simple title under the limitation adverse possession rule had it continued uninterruptedly for the period prescribed.*" *Wells v. Wells*, 346 S.W.2d 33, 36 (Ky.1961) (citing *Phillips v. American Ass'n, Inc.*, 259 Ky. 402, 82 S.W.2d 456, 457 (1935)).

On the other hand, this does not mean that title automatically vests in the adverse possessor. Rather, until expiration of the fifteen-year period, the adverse possessor's rights to the land adversely possessed are merely inchoate. KRS 372.070 protects those inchoate rights by voiding a deed from the title owner to a grantee during the period of adverse possession, but only as to the land adversely possessed. *Jones v. Hargis*, 286 Ky. 353, 150 S.W.2d 928 (1941) ("[A]ppellee's deeds were champertous and void *to the extent they purported to convey the land within the interference* because such land was in the adverse possession of appellant's predecessor in title when the deeds were executed." Emphasis supplied); *Marley v. Baumer*, 250 Ky. 682, 63 S.W.2d 919, 919 (1933) ("[A]ppellees were in the actual adverse possession of the land in dispute at the time appellant acquired title, and that the deeds to him were champertous, and therefore void *to that extent.*" Emphasis

supplied). Once the fifteen-year period expires, title to the property at issue may vest in the adverse possessor. *See* KRS 413.010.

Until the fifteen-year period expires, however, the original grantor (the owner at the time the adverse possession commenced) still has a right of action against the adverse possessor.[6] *Cowherd*, 456 S.W.2d at 830. It is yet another way of explaining that, even if a deed conveying property is found to be void for champerty under KRS 372.070(1), title does not vest in the adverse possessor who has not occupied the land for the statutory period, and the original grantor retains a course of action against the possessor. *See Cowherd*, 456 S.W.2d at 830–31.

Applying these concepts here, the circuit court determined that, for purposes of KRS 372.070(1), Brewster adversely possessed a portion of Lot 32 when the Corbitt Living Trust attempted to convey that property to the Henningers. Consequently, under the statute, that conveyance is champertous and void. On appeal, the Henningers take issue only with the circuit court's finding that Brewster's possession of the property was "hostile." We focus our review accordingly.

According to the Henningers, the record is simply void of any evidence to support the circuit court's finding that Brewster's possession of the subject property was hostile. We disagree.

As explained by one authority, "[h]ostility is the very marrow of adverse

---

"hostile" and "adverse" may be used interchangeably throughout this opinion.

**6.** We take judicial notice that, in fact, Corbitt Living Trust has filed its own declaratory judgment action against Brewster (Pulaski Circuit Court, Division II, No. 2010–CI–01696). As stated in *Cowherd*, "title [to the

adversely-possessed property] remains in the grantor, and may be subsequently purchased from him by the adverse possessor during the pendency of a suit against such [adverse] possessor by the grantor for the benefit of the champertous grantee." *Cowherd*, 456 S.W.2d at 830.

possession." 3 Robert W. Keats, et al., *Kentucky Practice: Methods of Practice* § 5.3 (3d ed.1989). "To say that possession is hostile should mean nothing more than that it is without permission of the one legally empowered to give possession, usually the owner." *Id.; see also Nelson v. Johnson,* 189 Ky. 815, 226 S.W. 94, 97 (1920) (explaining the hostile possession "of lands by a claimaint is holding with the intention of taking and hold them as his, to the exclusion of all others"); Black's Law Dictionary (9th ed.2009) (defining "hostile possession" as "[p]ossession asserted against the claims of all others, especially the record owner"). Indeed, one who obtains the property owner's permission to enter or possess land does not possess the property hostile to that owner's interest. *Cowherd,* 456 S.W.2d at 829 (explaining a person's possession of property "originating by permission is not adverse"); *White v. Smith,* 265 S.W.2d 937, 938 (Ky.1954) ("Possession of one who enters upon land by owner's permission ... is not hostile and will not ripen into title under adverse possession rule."); *United Hebrew Congregation of Newport v. Bolser,* 244 Ky. 102, 50 S.W.2d 45, 47 (1932) (emphasizing "possession by permission ... cannot ripen into title" via adverse possession).

In support of her March 12, 2009 motion for summary judgment, Brewster attached her affidavit discussing the events leading up to the placement of the mobile home at issue in its current location. Brewster explained,

2. In July 1996, [Brewster's] mother and father, James and Jettie Brewster, bought Lot 31 ... from the previous owner, Raymond Stacy. Mr. Stacy had owned [Lot 31] since 1981. When her parents bought the lot, [Brewster] was present when Mr. Stacy showed her parents and her brother Freddie the location of the survey pins for the lot lines. Those pins formed the line to which ... first her parents and then her brother Freddie and now [Brewster] have held, owned, and used the property since that time, in a hostile, open [and] notorious, exclusive and continuous manner since 1996.

....

4. [Brewster] and her brother's use of the property concerned herein has been hostile in the sense that they have claimed the property as their own, and such claim has been hostile to the claim, if any, of [the Henninger's] predecessor, and now the claim of [the Henningers]. [Brewster's] family cleared [Lot 31] off after it was bought by her parents. They did so to the lines shown them by the previous owner, Mr. Stacy. [Brewster's] brother Freddie moved a mobile home onto the middle of the Lot in 1997 and it has remained on the lot ever since. It has been used as a residence continuously since that time by [Brewster's] brother, then [Brewster], and now, with [Brewster's] permission, [her] son. [Brewster's] other brother, Cecil, would mow the yard around the mobile home, up to the lines shown by Mr. Stacy. The line was and has been easily distinguishable because beyond the line the property was grown up with brush and small trees. [Brewster] and her family have been the sole occupant's [sic] of the lot since it came into their family, and no one has even tried to use it in any way. And the home has been in continuous use as a residence by [Brewster] and her family since 1997.

Brewster's sworn affidavit reveals that Mr. Stacy, Lot 31's prior owner, showed Brewster survey pins which purportedly established the boundary line between Lot 31 and Lot 32. Based upon Mr. Stacy's representations, Brewster's family placed the mobile home in its current lo-

cation because they believed the land upon which the mobile home is located belonged to them, not because they received permission from the Corbitt Living Trust to utilize a portion of Lot 32. Accordingly, contrary to the Henninger's position, Brewster's uncontradicted affidavit provides sufficient evidentiary proof that Brewster's possession of part of Lot 32 was hostile to the Corbitt Living Trust's interest, *i.e.* that she did not have permission from the Corbitt Living Trust to place the mobile home on a portion of Lot 32 and she did so under a claim of right believing she owned the property. The circuit court did not err in relying on such evidentiary material and concluding there was no genuine issue of material fact that Brewster's possession of a portion of Lot 32 was hostile as we understand the statute.

The Henningers next assert that summary judgment was improper because Brewster failed to establish that it is impossible for them to eventually produce evidence at trial negating the hostile element. In support, the Henningers contend that, if granted adequate time to engage in additional discovery, namely depositions, they could potentially produce evidence that Freddie Brewster placed the trailer on Lot 32 with the original grantor's permission or that he did so in "response to the kind and neighborly license that had been given to him by the original owners of Lot 32," the Corbitt Living Trust and Phyllis Corbitt. (Appellant's Brief, p. 9). The Henningers argue that because Brewster failed to establish it would be impossible for them to negate the hostile element, summary judgment was improperly entered.

■ The Henningers' position that additional discovery may produce evidence negating Brewster's claim that she adversely holds a portion of Lot 32 is untena-

ble. To be sure, "[summary judgment] is proper only after the party opposing the motion has been given ample opportunity to complete discovery and then fails to offer controverting evidence." *Suter v. Mazyck,* 226 S.W.3d 837, 841 (Ky.App. 2007) (citing *Pendleton Bros. Vending, Inc. v. Com. Finance & Administration Cabinet,* 758 S.W.2d 24, 29 (Ky.1988)). Of course, "[i]t is not necessary to show that the respondent has actually completed discovery, but only that respondent has had an opportunity to do so." *Hartford Ins. Group v. Citizens Fidelity Bank & Trust Co.,* 579 S.W.2d 628, 630 (Ky.App.1979).

■ Here, the Henningers filed their complaint on April 3, 2008. Thereafter, on September 15, 2008, the Henningers propounded upon Brewster interrogatories, requests for the production of documents, and requests for admissions; Brewster responded to the discovery requests on November 15, 2008. Thereafter, in early March 2009, the parties filed competing motions for summary judgment. Brewster's affidavit, discussed above, was attached to her summary judgment motion. Nonetheless, from March 2009 until March 2010 when the circuit court entered its order granting Brewster's motion, the Henningers neither engaged in further discovery nor requested additional time to do so. *See* CR 56.06 ("Should it appear from the affidavits of a party opposing the motion that he cannot for reasons state by affidavit facts essential to justify his opposition, the court may ... order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had[.]"). In total, the Henningers had just shy of two years to engage in the necessary discovery, yet failed to do so; we find this time to be adequate under the less-than-complex and relatively straightforward facts of this case. *See Suter,* 226 S.W.3d at 842 (explaining whether a party

had sufficient time to complete discovery must be determined "within the context of the individual case"); *Hartford*, 579 S.W.2d at 630 (concluding summary judgment was proper when the respondent did not conduct discovery during the 6 months following the filing of the complaint, the movant submitted evidence favoring summary judgment, and the respondent failed to file any evidence contradicting or refuting that of the movant's).

▮ Further, our difficulty in accepting the Henningers' argument also "lies in the fact that there is no showing that such evidence could be presented at trial." *Neal v. Welker*, 426 S.W.2d 476, 478 (Ky. App.1968). Brewster, by virtue of her affidavit, established the apparent nonexistence of a genuine issue with respect to the hostility element. In that circumstance, the Henningers, as the opposing party, must "show [their] hand, or enough of it to defeat the motion, before trial on the merits." *Barton v. Gas Service Co.*, 423 S.W.2d 902, 905 (Ky.1968).

> When the moving party has presented evidence showing that despite the allegations of the pleadings there is no genuine issue of material fact, *it becomes incumbent upon the adverse party to counter that evidentiary showing by some form of evidentiary material reflecting that there is a genuine issue pertaining to a material fact.*

*Neal*, 426 S.W.2d at 478 (emphasis added). That is to say, if the moving party, by virtue of an "uncontroverted affidavit[ ] which clearly discloses the fact show[s] that a genuine issue does not exist, the opposing party has an obligation ... by counter-affidavit, or otherwise, to show that evidence is available justifying a trial of the issue involved." *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky.1955); *see also de Jong v. Leitchfield Deposit Bank*, 254

S.W.3d 817, 825 (Ky.App.2007) (explaining summary judgment was proper because, once the appellee "met its *prima facie* burden of demonstrating the absence of any genuine issue of material fact" the burden shifted to the appellants to "produce any affirmative evidence, by deposition testimony, affidavits, documents, or otherwise" to counter the appellee's evidence).

▮ Here, the Henningers simply failed to present any evidentiary material contradicting or refuting Brewster's affidavit. The Henningers "conclusions and conjectures" concerning what evidence additional discovery might produce are not sufficient to sustain their burden imposed upon them by Brewster's affidavit supporting her motion for summary judgment. *See Harstad*, 338 S.W.3d at 812. To that end, the Henningers' argument fails because "[c]onclusory allegations based on suspicion and conjecture" are not sufficient to create an issue of fact to defeat summary judgment. *Id.; see also Neal*, 426 S.W.2d at 479–80 (emphasizing the appellant's "hope or bare belief ... that something will turn up cannot be made basis for showing that a genuine issue as to a material fact exists"); *Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 572–73 (Ky.App.2005) (same); *de Jong*, 254 S.W.3d at 825.

Further, as a corollary to this argument, the Henningers assert that Brewster's affidavit, viewed in a light most favorable to them, favors their position that "Brewster and her predecessor-in-interest likely had a mere license to be upon Lot 32 and were not claiming adverse possession from that grantor." In support, the Henningers point to paragraph five of Brewster's affidavit in which Brewster claims "Phyllis Corbitt would come down and visit with [Brewster's] family and clearly knew that they were living there." (Appellant's

Brief, p. 9). Relying upon this statement, the Henningers assert such "peaceful visiting" between Phyllis Corbitt and Brewster "favors, rather than undermines or negates, the reasonable inference that Brewster and her predecessor-in-interest understood that they were on Lot 32 merely with the grantor's permission, rather than because they were making an open and adverse claim to Lot 32 against those grantor's interests." We disagree.

"The owner's mere knowledge of the possession [by a third party] . . . [does] not destroy hostility." 3 Robert W. Keats, et al., *Kentucky Practice: Methods of Practice* § 5.3 (3d ed.1989). In fact, as explained, to establish adverse possession under KRS 372.070(1), the moving party must, *inter alia*, prove his or her possession of the property was "open and notorious." *See Phillips*, 103 S.W.3d at 708 ("The open and notorious element requires that the possessor openly evince a purpose to hold dominion over the property with such hostility that will give the non-possessory owner notice of the adverse claim." (internal quotation marks omitted)). To say that an owner's knowledge that a third party is adversely holding possession of property, standing alone, negates the "hostile" element finds no support in Kentucky jurisprudence.[7]

Finally, the Henningers contend, *albeit* vaguely, that, because Freddie Brewster's act of placing the mobile home on a portion of Lot 32 resulted from his mistaken belief as to the boundaries of Lot 31, his and subsequently Brewster's possession of Lot 32 was not hostile and adverse. To this end, the Henningers argue, Brewster's

mistaken belief as to the property line prevented her claim from being adverse to the Corbitt Living Trust and, in turn, the Henningers.

Our Supreme Court's opinion in *Tartar v. Tucker*, 280 S.W.2d 150 (Ky. 1955) teaches us that when an occupant obtains possession of land under the mistaken belief that the property is his, and he conveys no intention of surrendering the disputed property, he is, in fact, holding the property adversely. *Id.* at 153. Physical improvements to the property, such as fences and buildings, demonstrate the possessor's intent to adversely hold the property. *Appalachian Regional Health-care, Inc. v. Royal Crown Bottling Co., Inc.*, 824 S.W.2d 878, 880 (Ky.1992).

This Court's opinion in *Johnson v. Kirk*, 648 S.W.2d 878 (Ky.App.1983) provides additional guidance. In *Johnson*, the adverse possessors, the Kirks, placed a fence around their property, lot #4. Unbeknownst to the Kirks at the time, the fence also enclosed a segment of its neighboring property, lot #3. Thereafter, the Johnsons purchased lot #3. Upon discovering the Kirks' fence enclosed a portion of their lot, the Johnsons brought suit claiming ownership of the enclosed portion. In defense, the Kirks claimed the original grantor's conveyance of lot #3 to the Johnsons was champertous because the Kirks were adversely holding a portion of lot #3.

On appeal, the issue before the court was whether the Kirks' mistaken belief that they were placing the fence solely on their own property (lot #4) negated the hostility requirement necessary to void a deed as champertous. The court noted

---

7. Of course, an owner's knowledge of the adverse possession may be relevant as to whether the owner granted the third party permission to use the property. *See Phillips*, 103 S.W.3d at 708 ("Possession by permission cannot ripen into title no matter how long it

continues."). Here, there was no evidence that Brewster's possession was by permission. Reference to claims by adverse possession in the deed from Corbitt Living Trust to the Henningers undermines any such inference.

that, "although the Kirks did not intend to put their fence on someone else's property they, in fact, did. They put the fence on a line formed by some stakes and held out to all the world that the property so enclosed was theirs." *Id.* at 879. After examining relevant authority, the court determined the intent of the adverse possessor at the time he or she took possession of the property controlled. *Id.* at 880. The court explained "the intention with which the occupation is made always determines and fixes its character as being adverse or otherwise ... [and] the fact that the occupation is based on mistake does not prevent it from being adverse if the intention is to claim and hold the land as one's own up to a mistaken line[.]" *Id.* To that end, the court found the "Kirks intended to only hold property that they owned, but they actually thought they put the fence on their property line, and they intended to hold all the property that was enclosed in the fence as their own. The fact that they later discovered their error in putting the fence on someone else's property in no way changes their intention at the time the fence was erected." *Id.*

Here, the Henningers assert, and Brewster does not dispute, Brewster's predecessor-in-interest, Freddie, placed the mobile home partially on Lot 32 as a result of the Brewster family's mistaken belief as to Lot 31's boundary lines. As noted, the mistake occurred when Lot 31's prior owner, Mr. Stacy, showed them survey pins which supposedly identified the boundary line between Lot 31 and Lot 32. As in *Johnson,* Freddie, and in turn Brewster, did not originally intend to position the mobile home on any portion Lot 32, but he, in fact, did. From that point forward, they openly treated the property as their own, and evinced no intention of surrendering the disputed portion. Such intention is revealed by the fact that, upon purchasing Lot 31, Brewster and her family cleared the lot to the boundary line shown to them by Mr. Stacy. Thereafter, in 1997, Brewster's family constructed a driveway running from the road to the mobile home. Moreover, Brewster's brother, Cecil Brewster, would mow the yard around the mobile home up to the claimed boundary line and, beyond Lot 31's purported boundary, the land was grown up with brush and small trees. Accordingly, Brewster's mistaken belief as to Lot 31's boundary line does not negate the hostile element necessary to establish adverse possession under KRS 372.070(1).

In sum, Brewster presented sufficient evidence to establish a genuine issue does not exist as to the "hostility" element; the Henningers failed to refute such evidence and had adequate time to complete discovery to do so. Additionally, Freddie's mistaken belief that he was placing the mobile home only on Lot 31, and Brewster's embrace of that mistake, does not negate Brewster's hostile possession of a portion of Lot 32. Accordingly, the Pulaski Circuit Court properly entered summary judgment finding the deed conveying Lot 32 from the Corbitt Living Trust to the Henningers is void as champertous under KRS 372.070(1), but only to the extent of the adversely-possessed portion of the property conveyed by the deed. *Johnson,* 648 S.W.2d at 880; *Jones,* 150 S.W.2d at 931; *Marley,* 63 S.W.2d at 919.

## IV. *Conclusion*

For the foregoing reasons, the Pulaski Circuit Court's March 8, 2010 order granting summary judgment in Brewster's favor is affirmed.

ALL CONCUR.